FILED
SUPERIOR COURT
OF GUAM

2022 APR 15 PM 3: 54

CLERK OF COURT

BY:_____

**IN THE SUPERIOR COURT OF GUAM**

| | |
|---|---|
| PACIFIC DATA SYSTEMS, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> GUAM DEPARTMENT OF EDUCATION, <br><br> Defendants. | CIVIL CASE NO. CV0760-21 <br><br> **DECISION AND ORDER** <br> **Teleguam Holdings, LLC.'s ("GTA")** <br> **Motion to Intervene** |

## INTRODUCTION

This matter came before the Honorable Arthur R. Barcinas on February 11, 2022, for a hearing on GTA's Motion to Intervene. Present at the hearing were: William Brennan for GTA, Attorney James Stake for the Department of Education ("GDOE"), and Attorney Joshua Walsh for Pacific Data Systems ("PDS"). At the hearing PDS and GTA made their arguments on the motion and the Court took the matter under advisement. Having considered the arguments and the applicable law, the Court hereby **GRANTS** GTA's Motion to Intervene as of Right and **GRANTS** GTA leave to file its Proposed Answer in Intervention.

## BACKGROUND

On April 28, 2021, GDOE issued two invitations for bids on the procurement of Plain Old Telephone Services ("POTS") and Data Transmission Services ("DTS"). D. Tydingco Decl. Supp. to Mot. Intervene p. 1 (Dec. 3, 2021). GTA submitted bids in response to the two

invitations for bid. *Id.* On or about June 4, 2021, GDOE issued notices of award for both the POTS and DTS procurement invitations. *Id.* at p. 2.

On September 7, 2021, GDOE transmitted to GTA fully executed contracts for both the POTS and DTS, and a congratulatory letter stating services shall commence no earlier than October 1, 2021. *Id.*

On September 11, 2021, GTA engineers and technicians began working on the facilities necessary to perform under the contracts. *Id.*

On September 20, 2021, GTA submitted a Local Service Request ("LSR") to PDS to begin the porting process and transition services, which are necessary for the customer to continue to use the same phone numbers despite the change in provider. *Id.* On September 21 and 24, 2021, GTA sent additional LSRs for porting and transition of services in anticipation of performance by October 1, 2021. *Id.* PDS responded on September 24, 2021, confirming receipt of the LSRs and stating that PDS has placed a hold on further processing of the orders pending review by Counsel. *Id.* To date, PDS declines to release the ports to GTA. *Id.*

On October 28, 2021, PDS filed the instant suit against GDOE but not GTA. V. Compl. (Oct. 28, 2021).

On November 30, 2021, GTA representatives attended a show cause hearing where it heard for the first time that PDS's existing contract to provide DTS and POTS to GDOE was extended through January 2022. D. Tydingco Decl. Supp to Mot. Intervene p. 3 (Dec. 3, 2021).

On December 3, 2021, GTA filed a Motion to Intervene. PDS filed an Opposition to the Motion to Intervene on January 3, 2022, to which GTA filed a Reply on January 18, 2022. Finding it necessary to first address the Motion to Intervene, the Court held its decision on the Ex Parte Motion for Preliminary Restraining Order and Order to Show Cause in abeyance.

Oral arguments on the Motion to Intervene were held on February 11, 2022, and the Court took the matter under advisement.

## DISCUSSION

### I. INTERVENTION OF RIGHT

An applicant for intervention must satisfy the following four criteria before the motion can be granted: (1) the motion to intervene must be timely; (2) the applicant must have a "significantly protectable interest" relating to the property or transaction that is the subject of the suit; (3) the applicant must be so situated that disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties. *Limtiaco v. Camacho*, 2009 Guam 7 ¶ 10. These factors are construed broadly in favor of the intervention. *Id.*; *see* also *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996). The Court addresses each factor and its subparts in turn.

#### A. GTA's Motion to Intervene is Timely.

Timeliness is a threshold requirement for application to intervene as a matter of right. *Limtiaco*, 2009 Guam 7 ¶ 11; *see also League of United Latin Am. Citizens*, 131 F.3d, 1297, 1302 (9th Cir. 1997). If a motion to intervene is not timely, the court need not consider the other factors in denying the intervention. *Id.*; *see* also *Washington*, 86 F.3d at 1503. "Timeliness is to be determined from all the circumstances. And is to be determined by the [trial] court in the exercise of its sound discretion; unless that discretion is abused, the [trial] court's ruling will not be disturbed on review." *Pizarro v. Pizarro*, 2013 Guam 16 ¶ 24; (*quoting NAACP v. New York*, 413 U.S. 345, 366 (1973).

To determine whether a motion to intervene is timely, the Court will consider: (1) the stage of the proceedings at the time the applicant seeks to intervene, (2) the prejudice to other parties if the motion is granted, and (3) the reason and length of the delay. *Id.*

### i. *Stage of the Proceeding*

The first factor in determining timeliness is the state of the proceedings. Intervention will not generally be allowed after trial has begun or is about to begin. *Id.* ¶ 26; *see Schaulis v. CTB/McGraw-Hill, Inc.*, 496 F. Supp. 666, 677 (N.D. Cal. 1980) (holding that motion to intervene was untimely where the case had been set for trial).

GTA argues that its motion to intervene is timely because the proceedings are still in the "pre-answer, pre-discovery" stage and "no scheduling order is in place." GTA's Mem. P. & A. p. 4 (Dec. 3, 2021).

At the time GTA filed its Motion and Memorandum of Points and Authorities in support of its Motion to Intervene on December 3, 2021, GDOE had not yet filed its Answer. GTA's assertion that the proceedings in the instance case were still in the "pre-answer" phase may have been accurate at the time of its filing, but it is no longer accurate. GDOE filed its Answer on December 27, 2021. The proceedings are in the "pre-discovery" stage and no scheduling order is in place. Therefore, since trial has not yet begun, nor is it scheduled to begin, the Court finds that GTA's Motion to Intervene is timely at this stage of the proceedings.

### ii. *Reason and Length of Delay*

The second factor in determining the timeliness is the reason and length for delay. The Guam Supreme Court has held that "the timeliness clock runs either from the time the applicant knew or reasonably should have known of his [stake in the case into which he seeks to intervene] or from the time he became aware that his [stake] would no longer be protected

by the existing parties to the lawsuit." *Sablan v. GLUV & DLM and Younex Int'l Corp.*, 2011 Guam 12 ¶ 25. More specifically, the Supreme Court has clarified that "[a]n applicant should not be expected to petition for intervention in instances in which it has no reason to believe its interests are not being properly represented." *Id.* (*quoting Shin Cho & Tumon Partners*, 2009 Guam 21 ¶ 22). The proper legal standard in undertaking a timeliness determination, therefore, requires the court to consider when the proposed intervenor became aware that its interests were no longer being protected by a party. *Id.*

While GTA may have had constructive notice of GDOE's Notice of Interested Parties filed on July 23, 2021, PDS could not expect for GTA to move for intervention where it had no reason to believe its interests are not properly represented. The inquiry turns on whether GTA was aware that its interests were no longer being protected by GDOE at that time. GTA became aware that its interests were not being represented at the hearing on November 30, 2021, when GDOE only defended against its actions related to the procurement. Therefore, the time for intervention started on November 30, 2021. GTA promptly filed its Motion to Intervene on December 3, 2021, which is only three days after the time for intervention started. The Court finds that GTA did not delay its Motion to Intervene.

### iii. *Prejudice to Other Parties*

The third and "most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case." *Sablan,* 2011 Guam 12 ¶ 15. The prejudice to the original parties to the litigation that is relevant to the question of timeliness is only *that prejudice* which would result from the would-be intervenor's failure to request intervention" at an earlier time. *Pizarro*, 2013 Guam 16 ¶ 33; (*quoting Stallworth v. Monsanto Co.*, 558 F.2d 257, 265 (5th Cir. 1977) (emphasis added). In other words, "[t]he requirement of timeliness is not a tool of

retribution to punish the tardy would-be intervenor, but rather a guard against the original parties by the failure to apply sooner." *Sablan*, 2011 Guam 12 ¶ 15; (*quoting John Doe No. 1 v. Gilckman*, 256 F.3d 371, 375 (5th Cir. 2001). Additional delay due to a motion to intervene is not alone decisive. *Limtiaco*, 2009 Guam 7 ¶ 19.

The Court recognizes that GTA brought its motion as soon as practicably possible as indicated above. GTA promptly filed its Motion to Intervene, therefore, GDOE and PDS did not experience any prejudice in the three days from when GTA first came to know that its interests were no longer represented by GDOE to when GTA brought its Motion to Intervene. GTA's proposed Answer in Intervention is immaterial to the determination of prejudice as it relates to timeliness. The Court finds that GTA's Motion to Intervene is timely.

**B. GTA has a Significantly Protectable Interest.**

The second element to establish intervention as of right is that the intervenor has a significantly protectable interest. To demonstrate such an interest, the applicant must establish: (1) the interest [asserted] is protectable under some law," and (2) there is a "relationship between the legally protected interest and the claims at issue." *Limtiaco*, 2009 Guam 7 ¶ 27.

GTA has a significant protectable interest in the instant suit. GDOE's transmission of a congratulatory letter and the fully executed contracts for both POTS and DTS to GTA on September 7, 2021, reflect that GTA is the winning bidder. D. Tydingco Decl. Sipp. to Mot. Intervene p. 2 (Dec. 3, 2021). a GTA was to perform under the two executed contracts no later than October 1, 2021. *Id.* In the interest in timely performing under the contracts, GTA engineers and technicians began working on the facilities on September 11, 2021. *Id.* GTA also made efforts to begin the porting process to transition services from PDS to GTA on September 20, 21, and 24, 2021. *Id.* Despite GTA's repeated efforts, PDS declines to release the necessary ports for GTA to timely perform under the POTS and DTS contracts. *Id.* Without

the necessary ports, GTA cannot timely initiate performance under its contracts with GDOE. The Court finds that GTA has a significantly protectable interest in performance under the fully executed contracts with GDOE.

### C. Disposition Without GTA Impairs Its Ability To Protect Its Interest.

The third element to establish intervention as of right is the impairment of the applicant's ability to protect its interest. The applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect its interest. *Limtiaco*, 2009 Guam 7 ¶ 10. In determining impairment of the applicant's ability to protect its interest, "the court must consider whether [its] remedies are impaired or impeded by not allowing intervention." *Sablan*, 2011 Guam 12 ¶ 31.

Here, the GTA has an interest in performing under its executed contracts with GDOE, as discussed above. GTA has already mobilized resources to provide POTS and DTS to GDOE in an effort to timely perform under the contract. Without intervention, GTA runs the risk of losing the ability to provide the DTS and POTS to GDOE in an action to which it is not a party. The remedy available to GTA without intervention would be either to initiate its own suit that will likely turn on the outcome of this instant case, or wait for the outcome of the instant case which may or may not be favorable to its interest in performing under the contract. This would also serve to prolong GTA's ability to seek relief and its potential to perform under the contract, if at all. In contrast, should intervention be granted, GTA would have the opportunity to be heard and take a position in the matter that would directly affect its interest in performing under the contract. The Court finds that GTA's abilities to protect its interest would be impaired without intervention.

## D. GTA's Interests Are Inadequately Represented By PDS And GDOE.

The fourth element to establish intervention as of right is that the applicant's interests are inadequately represented by the existing parties. In determining whether GTA's interest are inadequately represented by existing parties, the Court must consider: (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the intervenor would offer any necessary elements to the proceeding that the other parties would neglect. *Limtiaco*, 2009 Guam 7 ¶ 35; *see* also *Cal v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986). "A mere difference of opinion concerning the tactics with which litigation should be handled does not make inadequate the representation of those whose interest are identical with that of an existing party or who are formerly represented in the lawsuit." *Id.*; (*quoting Jones v. Prince George's County Md.*, 348 F.3d 1014, 1020 (D.C. App. 2003).

First, the Court will consider whether either GDOE or PDS adequately represent GTA's interest in performing under the executed contract. Here, PDS is interested in voiding the contracts entered into by GDOE, and enjoining GDOE from taking further action regarding performance under the invitation for bid for POTS and DTS. V. Compl. p. 9 (Oct. 28, 2021). PDS's interests are in direct contrast to that of GTA. An interest to void GDOE's contract is an interest to void GTA's contract. Therefore, PDS is not likely to make any arguments available to GTA.

GDOE's interest is to defend itself in the instant suit. While GDOE and GTA are parties to the contrast in the instant case, GDOE likely will not make all the arguments that may be available to GTA because they do not sit in the same capacity. GDOE is the soliciting agency and GTA is the winning bidder. Given GDOE's capacity as the soliciting agency and

its focus in defending itself in the instant suit, it cannot be said that GDOE will undoubtedly make all the arguments available to GTA. Further, GTA specifies that the arguments it intends to make counter PDS's allegations and claims and demonstrate that the instant suit is baseless. Mot. Intervene p. 10 (Dec. 3, 2021). The nature of this argument surely will not come from PDS, nor has this type of argument been advanced by GDOE.

Next, the Court considers whether PDS or GDOE are willing to make arguments available to GTA. Since PDS is the opposing party to the contract, it can reasonably be concluded that PDS is not willing to make arguments that may be available to GDOE. The same can be said for GDOE.

Here, GDOE had the opportunity to advance arguments that are available to GTA at the November 30, 2021, show cause hearing. However, GDOE did not advance any such argument. Instead, GDOE focused on its conduct as the soliciting agency, the distinction between pre- and post-award protest, and the potentially-resulting automatic stay. Mot. Intervene p. 10 (Dec. 3, 2021). This event reflects GDOE's unwillingness to advance arguments available to GTA, including the arguments GTA claims it intends to make—arguments that counter PDS's allegations and to demonstrate that the instant suit is baseless.

Finally, the Court considers whether GTA offers any necessary elements to the proceeding that the other parties would neglect. Here, the Court recognizes GTA's Proposed Answer in Intervention in consideration of this factor. *see* Mot. Intervene Attachment (Dec. 3, 2021). GTA's Proposed Answer in Intervention is separate and apart from GDOE's Answer and Defenses. Further, this factor highlights GTA and GDOE's distinguished capacities. GTA offers the perspective as the winning bidder that is not otherwise offered nor represented by GDOE. The Court concludes that (1) GTA's Motion to Intervene is Timely; (2) that GTA has a significantly protectable interest; (3) that disposition without GTA would impair its ability to

protect its interest in performing under the contracts; and (4) that GTA's interests are inadequately represented by PDS and GDOE.

## II. PERMISSIVE INTERVENTION

The analyses above are dispositive of the issue on the motion to intervene; therefore, the Court will not address permissive intervention.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** GTA's Motion to Intervene as of Right and **GRANTS** leave for GTA to file its Proposed Answer in Intervention.

**IT IS SO ORDERED** ___APR 1 5 2022___.

**HONORABLE ARTHUR R. BARCINAS**
Judge, Superior Court of Guam

**SERVICE VIA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:
_Arriola_
_Razzano_
Date: _____ Time: _4/15/22_

__Joseph Bamba, Jr.__
Deputy Clerk, Superior Court of Guam